58 So.2d 513 (1952)
MacGREGOR
v.
HOSACK.
Supreme Court of Florida, Special Division B.
March 18, 1952.
Rehearing Denied May 20, 1952.
Wideman, Caldwell, Pacetti & Robinson, Manley P. Caldwell and H. Elmo Robinson, all of West Palm Beach, for appellant.
J.W. Salisbury and James W. Johnson, Palm Beach, for appellees.
HOBSON, Justice.
Appellant herein instituted a common-law action against the appellee in the Circuit Court of the Fifteenth Judicial Circuit in and for Palm Beach County in which he sought to recover commissions allegedly due him by Helen Webster Hosack for services rendered as a real estate broker.
*514 The facts of this case are somewhat unusual. Appellant claims that he was employed by the appellee to procure and produce a purchaser ready, willing and able to buy certain real property then owned by appellee. He alleges that he was to be paid 5% of the purchase price as a commission; that he procured and produced one Smoot who was ready, able and willing to purchase the subject property and that Smoot and the appellee entered into a contract for the sale and purchase of said property. The purchase price of the property was the sum of $65,000. Upon the execution of the contract Smoot paid to the appellee $6500 as a binder on deposit. Appellant alleges that thereafter, and without any fault on his part, Smoot and the appellee entered into an agreement whereby Smoot was relieved of his obligations under the contract and the appellee was permitted to retain the $6500 as liquidated damages. In connection with this claim for a commission appellant alleges, in addition to the fact that he entered into a contract with the appellee to procure and produce a purchaser ready, able and willing to purchase the property, that it is the common usage and custom in the locality wherein this transaction took place, in a situation such as the one depicted herein, for the vendor to split the binder money with the broker unless 50% of such binder would be more than a 5% commission, in which event the broker would receive only that portion of the binder money which represents 5% of the purchase price.
As a second claim appellant alleges that after the appellee voluntarily released Smoot from his contract she again employed appellant to "find, procure and produce a purchaser for said property at the price of $65,000.00, payable $6500.00 as a binder or deposit and the balance in cash at the time of delivery of deed" and that appellee did agree to pay appellant a commission of 5% of the purchase price for such services. It is further alleged that appellant, through one of his salesmen, procured and produced a purchaser, one Ruth Richardson Howell, who did complete the purchase of the property.
Appellee contends her original contract with appellant was not that he should merely procure and produce a purchaser ready, able and willing to buy but that it was expressly agreed appellant was to receive his commission on the Smoot sale only "upon closing and passing of title." She further asserted that appellant had released her from any obligation to pay a commission. With reference to the second claim, which is upon the Howell transaction, appellee's contention is that she paid the $3250 claimed as commission. Appellant admits a payment to him of $3250 but asserts that he had the right to and did credit this amount upon the Smoot transaction because the debtor (appellee) did not specify that said payment was for commission due on the Howell deal. Appellee attached to her original answer the written agreement for the sale and purchase of the real property which was entered into between James Clinton Smoot and herself. It is appropriate at this juncture to observe that the aforementioned contract in paragraph 9 thereof provides as follows: "It is understood and agreed that Duncan MacGregor is the broker in this transaction and upon closing and passing of title will be entitled to be paid a commission equal to five per cent (5%) of the total sale price of said property, such commission to be paid by the party of the first part."
The significance of this provision of the contract will become apparent when we discuss the primary premise upon which the learned Circuit Judge bottomed the summary judgment which he entered.
Appellant's counsel moved for a summary judgment and filed an affidavit and copies of correspondence between the parties litigant in support thereof. Although the able Circuit Judge had previously denied a motion to dismiss the claim for commission bottomed upon the Smoot transaction, he, nevertheless, upon a hearing on the motion for summary judgment, reversed such ruling and entered a final judgment in favor of the appellee and against the appellant. In so doing he necessarily found that the pleadings did not create a genuine issue which should be tried and determined by a jury.
*515 For the sake of clarity and in order that the Circuit Judge's ruling may be thoroughly understood, we quote in part from the summary judgment which he entered: "As stated above, plaintiff seeks to recover, in the first claim, upon the theory that he was entitled to one-half of the deposit because of the `custom and usage'. However, the `custom and usage' could not prevail as against an express agreement between the parties. The contract which plaintiff says he procured and produced recites that `the broker in this transaction and upon closing and passing of the title will be entitled to be paid a commission equal to five per cent of the total purchase price of said property.' It is true that plaintiff, the broker, is not a formal party to the contract. However, his name appears as a witness, and he alleges that he procured and produced it. Plaintiff's pleading must be construed strictly against him. This means that every pleading is taken as stating the pleader's case as favorably to himself as possible. Under the circumstances of the procuring and the witnessing of the contract in question, the Court indulges the presumption that plaintiff knew of and acquiesced in the provision inserted in the contract regarding his commission. He is now estopped to assert a different arrangement, and would be entitled to a commission only `upon closing and passing of title.'"
It appears to us that the Circuit Judge did not give appropriate consideration to appellant's contention that he was only employed to procure and produce a purchaser ready, able and willing to purchase appellee's property. We have ofttimes held that a broker employed to produce a purchaser ready, able and willing to purchase upon the terms delineated by the vendor is entitled to a commission when he, in good faith, fulfills such contract. The broker is not required under this type of contract, absent a specific stipulation that he do so, to procure and produce a formal and binding written agreement for purchase and sale of the subject real property. It is only necessary that the broker procure and produce, in good faith, a purchaser who is ready, able and willing to purchase upon the terms and conditions specified in the contract of employment. As a general rule, if a broker is employed to sell property he fulfills his contract when he either completes the sale, leaving nothing for the owner to do but execute the necessary transfers of the title of the property or procures from his customer a binding written contract of purchase within the terms of his contract of employment. Knowles v. Henderson, 156 Fla. 31, 22 So.2d 384, 169 A.L.R. 600; Waddell v. Holbrook Co., 108 Fla. 332, 147 So. 213. See also Hart v. Pierce, 98 Fla. 1087, 125 So. 243; Malever v. Livingston, 95 Fla. 272, 116 So. 15 and cases cited therein.
We must agree with the Circuit Judge that "custom and usage" cannot prevail as against an express contract between the parties. However, we cannot agree that the appellant "says he procured and produced" a contract which recites that "the broker in this transaction and upon closing and passing of title will be entitled to be paid a commission equal to five per cent of the total purchase price of said property." We have searched the record in vain for such allegation or statement. His allegation is to the effect that he was employed to procure and produce a purchaser ready, willing and able to purchase on the terms and conditions of the listing given him by appellee and that he did so. His affidavit supports such allegation.
We are not inclined to hold, as did the Circuit Judge, that although the broker was not a formal party to the contract between the appellee and Smoot, he is, nevertheless, estopped to assert an agreement contrary to that recited in the contract between appellee and Smoot because his name appears as a witness particularly so since we cannot agree that appellant alleged or at any time asserted he was employed to, or that he in fact did, procure and produce the contract between the appellee and Smoot. Although appellant was a witness to the signatures on the contract between appellee and Smoot, that fact, standing alone, does not create an estoppel against appellant asserting a contract of employment different from that which was recited in the contract between the vendor *516 and vendee for the sale and purchase of the real property involved in this suit. If this case had not been determined upon a motion for summary judgment, and if the pleadings had permitted such testimony, it is possible the evidence might have developed the fact that appellant should be held estopped for some reason, such as having actually procured and drawn the contract between appellee and Smoot, or having been present when it was drawn or read aloud, at which time he remained silent when he might have been bound by equity and good conscience to speak. We deem it appropriate to observe that estoppel is an affirmative defense. It must be specially pleaded and if it is not pleaded it is waived. See 30 F.S.A. Florida Common Law Rules 9(d) and 13(h) which are practically identical with Federal Rules of Civil Procedure, rules 8(c) and 12(h), 28 U.S.C.A. See also Tornello v. Deligiannis Brothers, 7 Cir., 1950, 180 F.2d 553. We do not mean to say that if the facts which create an estoppel appear affirmatively on the face of the complaint and/or the exhibits the defendant in a common-law action might not assert the estoppel in a motion to dismiss. Such is not our construction of Florida Common Law Rules 9(d) and 13(h).
Although the pleadings did create one or more genuine issues of fact, when such pleadings are considered in the light of the affidavit which was filed in support of the motion for summary judgment it cannot be said that there remained any genuine issues of fact which should properly be submitted to a jury. The only issues of fact which we conceive to have been directly raised by the pleadings disappeared when appellant filed his affidavit and appellee failed to file a counter affidavit. Appellant, under oath, sustained the material allegations of his complaint and denied the averment in appellee's answer of an affirmative defense, to-wit: that appellant, after appellee and Smoot had relieved each other from the obligations of the contract, released appellee from her obligation to pay a commission on the Smoot transaction. Appellee had the right to file a counter affidavit but, as aforementioned, did not do so.
Our judgment must be one of reversal with directions to the learned Circuit Judge that he enter a final judgment in the sum of $3250, plus lawful interest and costs, in favor of the appellant who was the plaintiff below.
Reversed.
SEBRING, C.J., and ROBERTS, J., and JONES, Associate Justice, concur.