McNULTY, Chief Judge.
Plaintiff-appellant, a real estate broker, seeks a commission allegedly due for brokerage services rendered to appellee. He appeals iron a final judgment dismissing his fourth amended complaint with prejudice. We reverse.
The fourth amended complaint herein is in two counts. The material allegations of Count I are as follows:
“4. That during the month of February, 1972, the defendant entered into an oral listing with one Daniel Levine, a registered real estate broker, authorized and licensed and in good standing in the State of Florida for the sale of certain real estate, more particularly described as follows:
OAKWOOD MANOR MOBILE ESTATES
3300 Fruitville Road
Sarasota, Florida,
on certain terms which were drawn by Daniel Levine, a copy of which is attached hereto and made a part hereof, marked Exhibit ‘A’.
5. The defendant agreed to pay the usual and customary broker’s commission of ten (10%) percent of the sale price if Daniel Levine or any other broker found a customer ready, willing and able to purchase the property.
6. That during the month of May 1972, the exact time being unknown, the plaintiff, ROBERT MARLIN, entered into an oral agreement with said Daniel Levine for sale of the aforementioned real property wherein the plaintiff and Daniel Levine agreed to split the commissions on a Fifty (50)-Fifty (50) basis. The defendant was informed of this agreement and consented thereto.
7. That on or about June 26, 1972, plaintiff found a purchaser ready, willing and able to purchase the property. That at the aforementioned time, the purchasers presented a purchase and sales agreement, a copy of which is attached hereto and made a part hereof marked Exhibit ‘B’, for the purchase of the aforementioned property to the de *241 fendant. The defendant accepted in part and rejected in part the said offer and, at the same time and place, made a counteroffer on certain terms of the purchase agreement, which are indicated by asterisks on the purchase and sales agreement attached hereto and made a part hereof, which the purchasers agreed and assented to; that thereafter, for reasons unknown to the plaintiff, defendant has refused to sell the aforementioned property.”
The order appealed from is silent as to the grounds for dismissal, but appellee argues that the trial judge was correct for several reasons. The first reason relates to the ad damnum clause which ostensibly prays for less than the court’s jurisdictional amount. We summarily dispose of this point and reject it because it is patent from the record herein, from the arguments of counsel and from the allegations of the complaint that the insufficient amount prayed for is a scrivener’s error. Reading the complaint as a whole, all parties obviously knew and understood the amount involved, as did the court; and, indeed, the order appealed from dismissed the complaint “with prejudice” and not on jurisdictional grounds.[1] We hold, therefore, that the trial court had jurisdiction of the subject matter of the complaint and it exercised such jurisdiction.
Appellee’s next point is that the complaint alleges a brokerage contract to effect a “sale,” not a contract to produce a ready, willing and able purchaser; and that since it affirmatively appears that no sale took place no commission is due. True it is that paragraph 6 refers to “sale,” but this reference is only to the agreement as between appellant and the broker Levine. Paragraph 5, however, refers to appellee’s agreement with Levine; and this paragraph provides that the usual and customary brokerage commission shall be paid not only to Levine but to “any other broker” who finds “a ctistomer, ready, willing and able to purchase the property.” We think this latter paragraph forms the basis for appellant’s cause of action, especially when read in pari materia with paragraph 6 wherein it is alleged that ap-pellee acquiesced in appellant’s participating agreement with Levine. A reading of paragraphs 5 and 6 together, therefore, clearly reflects a brokerage contract not for a “sale” but for the finding of a ready, willing and able buyer.
 Appellee’s final point in support of the dismissal of Count I is that paragraph 7 thereof, together with Exhibit “B” referred to therein, does not show that ap-pellee intended to be bound by its alterations to the contract allegedly constituting the “counteroffer” because such contract was not signed by appellee, only by the prospective purchaser. Be that as it may, we emphasize that we are not here concerned with the enforceability of the contract for sale referred to in the complaint as Exhibit “B”; rather, the question is, did appellant allege enough to entitle him to a broker’s fee for finding a customer “ready, willing and able” to buy? It is clearly alleged that appellee’s “counteroffer” was accepted by the prospective purchasers. If this can be proved, then independently of appellee’s signature this would be sufficient for a broker’s fee even though it might not be sufficient to allow specific performance of the contract. Under the “ready, willing and able” standard, no enforceable written contract for sale need be entered into.[2]
Concerning, now, Count II of the fourth amended complaint, that count real-leges and repeats all of Count I and further alleges:
“10. That on or about June 22, 1972, without the consent or knowledge of the plaintiff, ROBERT MARLIN, said Daniel Levine entered into an agreement *242 with the defendant wherein he agreed to reduce his brokerage claim from the usual and customary ten (10%) percent to a flat FIFTY THOUSAND and 00/100 ($50,000) DOLLARS fee, a copy of the letter indicating said terms and conditions is attached hereto and made a part hereof marked Exhibit ‘C’.
“WHEREFORE, plaintiff, in the alternative, demands a judgment against the defendant in the sum of TWENTY FIVE THOUSAND and 00/100 ($25,000.00) DOLLARS representing his share of the commission plus court costs, interest and whatever other relief the court deems just.” (Italics ours.)
The Exhibit “C” referred to in paragraph 10 is a letter reflecting an understanding or agreement between appellee and the original broker Levine in which they agreed to reduce the commission to a flat $50,000 if the property was sold to one Cole or to a Viking General Corporation. Clearly, although essentially relying on the allegations of Count I, plaintiff-appellant is alternatively seeking under Count II his share of the reduced $50,000 brokerage fee. Appellee resists this on the grounds that there is no allegation of sufficient privity entitling appellant to recover under this theory. We cannot agree. Appellant’s entitlement to any commission at all depends upon proof of his allegations under Count I. The establishment of the facts under Count II may well limit the amount of recovery, but they cannot defeat appellant’s cause of action which is predicated on his agreement with Levine and the acquiescence of appellee as noted aforesaid. It is the privity between appellant and appellee in the latter agreement which controls here, not the lack of appellant’s privity in the understanding as between appellee and Levine which reduced the brokerage fee payable in the event of a sale to certain specified buyers.
Withal, we think that while the complaint may not be a model of draftsmanship or clarity it is at least sufficient to withstand a motion to dismiss. Accordingly, the order appealed from dismissing the complaint herein should be, and it is hereby, reversed; and the cause is remanded for further proceedings not inconsistent herewith.
GRIMES and SCHEB, JJ., concur.

. See Rule 1.420 (b), RCP.

. See Randolph v. Neeley (Fla.App.1st, 1966) 185 So.2d 785.