GLICKSTEIN, Judge,
dissenting.
After reviewing the record herein, I lack confidence in the majority’s analysis.
First, I feel the majority’s effectively equating this case with Home Federal Savings and Loan Association of Palm Beach v. Illustrated Properties Realty, 465 So.2d 1244 (Fla. 4th DCA 1984), is not going to make sense to the “players” involved in real estate transactions. The operative language here was not “due and payable upon closing.” The initial contract between the defendant exclusive broker and the developer said:
3. Upon the closing of a sale of any Unit pursuant to an agreement or option to purchase (including any such option granted in a lease) which is executed or the negotiation of which is commenced prior to the expiration of this Agreement or a sale of any Unit within two (2) months after the date of expiration this agreement, to any purchaser procured by Broker or any of cooperating broker and whose name is disclosed or mailed to Seller prior to the expiration of this Agreement, Seller agrees to pay to Broker a commission in an amount equal to *1043 eight percent (8%) of the total sales price of the Unit including all options and extras, all being payable within ten (10) days of each Unit closing. Within such ten (10)-day period, Seller shall deliver to Broker a copy of the Seller’s and purchaser’s closing statements.
Arrangements with cooperating brokers were left to Arvida, the exclusive broker. The contract also said:
16. In the event that all or any part of such deposit shall be forfeited by the prospective purchaser, Broker shall be entitled to the lesser of one-half (V2) of such deposit or the amount of commission otherwise due Broker pursuant to this Agreement, without set off or demand by Seller for any legal expenses incurred by Seller.
Second, the majority holds it was error to allow evidence of custom and usage as follows:
Q Mr. Tinnerman, the question I want to ask you is that relative to the relationship between the listing broker in this case like Arvida and the cooperating broker like Tinnerman & Company, what is the custom and usage in the trade as far as the split of any commission monies that have arisen because of a default by the purchaser?
A Okay. I’ll answer that twofold.
First of all, as a cooperating broker I do not have the listing agreement with regard to fees. The listing broker has the agreement with the seller as far as getting paid. It’s the listing broker who gets paid.
I don’t get paid by the seller. Therefore, my avenues to collect monies are strictly as a subagent of the listing agent. So I have to go to the listing agent to get paid. I don’t go to the seller.
And in the business when there is a default situation the monies that are defaulted, half of the monies up to the full amount of the commission will go to that listing broker as part of his earned fees. Then the listing broker takes that money. And then he will pay me on the same basic percentage as there would have been if the deal had really closed up to my full amount of the commission that would be entitled to me if it had fully closed.
I think there is merit to appellees’ contention that there was a missing term in their contracts with Arvida. Missing terms of an otherwise valid contract may be supplied in accordance with usual and reasonable customary practices.
Inasmuch as the listing agreement assured Arvida of a minimum commission when a buyer forfeited his deposit, it is reasonable to suppose Arvida’s co-broker sales registration brochure had a missing term respecting the co-broker’s fee in these circumstances, especially in light of the custom of the trade as described by Tinne-man.
It is noteworthy that there is a standard clause in the sale/purchase agreement commonly used in Florida, similar to paragraph 16 listing agreement here. It stands to reason, when such a provision is standard, that it is customary for cooperating brokers, to get a fair share of the listing broker’s receipts pursuant to it.
On one occasion Arvida’s Senior Vice-President wrote the following to the plaintiffs:
Dear Mr. Tinnerman:
I sincerely apologize on behalf of Arvida Realty Sales for the delay caused in you receiving your cooperating broker commission check. I assure you that some of the circumstances surrounding recent problems with the developers of the Mayfair at Boca were beyond my control and personal liking.
Arvida Corporation looks forward to continued co-broker business with your firm during 1983.
I sincerely wish you a happy holiday season. Good health_
This letter is far from suggesting that the cooperating broker was entitled to no commission at all when there was a buyer default.
I think it is a mistake for this court to substitute its judgment for that of judge and jury at trial. The co-broker registra *1044 tion brochure provision about a commission on closing need not be perceived to foreclose a commission in other circumstances, and need not be equated to the language that controlled in Illustrated Properties Realty. The result of the majority opinion is to give Arvida a. windfall.